R. L. POLK PRINTING CO. *v.* SMEDLEY.

1. EVIDENCE—CONTRACTS—PAROL EVIDENCE—ADMISSIBILITY.
   Where, in an action against the guarantors of the payment of a promissory note, it conclusively appears that the agreement is contained in a letter from plaintiff to defendants stating their understanding of an oral agreement, and defendants' letter of guaranty, parol evidence is inadmissible to vary its terms.

2. SAME—QUESTION FOR JURY—BILLS AND NOTES.
   The question of whether a note of one of the parties had not been accepted in place of the note guaranteed by defendants, the evidence being in conflict, should have been submitted to the jury.

Error to Wayne; Mandell, J. Submitted November 16, 1908. (Docket No. 68.) Decided December 21, 1908.

Assumpsit by the R. L. Polk Printing Company against John H. Smedley and Wilbur W. Murray as guarantors of the payment of a promissory note. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Reversed.

*Maybury, Lucking, Emmons & Helfman*, for appellants.

*George W. Bates*, for appellee.

BLAIR, J.   This action was brought upon the following guaranty:

"DETROIT, MICH., March 1, 1905.
"R. L. POLK PRINTING CO., Ltd.,
    "65–67–69 West Congress Street,
                "Detroit, Mich.

"*Gentlemen:*   In regard to the ninety-day note given you on January 14th in part settlement of the Sail and Sweep Publishing Company's account, it is understood that same may be renewed at the expiration of the ninety-day period, but that within one year same shall be materially reduced if not entirely paid.   The undersigned guarantee the payment of the above twenty-eight hundred dollar note.   It is understood that you are to give each of us ten days' notice in writing by mail at the expiration date of the note in order that we may make arrangements for partial payment of same or renew it.

"Yours truly,
[Signed]            "JOHN H. SMEDLEY.
[Signed]            "W. W. MURRAY."

The Sail & Sweep Publishing Company was a corporation engaged in the publication of a monthly magazine known as Sail & Sweep.   The defendants were directors thereof.   Mr. Glidden was its secretary and Mr. Van Fleet was its editor and business manager.   The actual work of printing was done by plaintiff.   Mr. C. W. Lloyd was its secretary.   He died in April, 1906, prior to the trial.   Mr. Goering was bookkeeper for plaintiff in 1905 and 1906.   On January 14, 1905, the Sail & Sweep Publishing Company was indebted to plaintiff in the sum of $3,313.87.   On the trial, plaintiff introduced in evidence the following letters:

"February 4, 1905.
"J. H. SMEDLEY, Esq.,
    "c/o PARKE, DAVIS & CO.,
            "Detroit, Mich.
"*Dear Sir:* We are this morning in receipt of a check

for $163.87 which we enclose herewith for your signature. The note for $2,800.00 which you send us we had received some two weeks ago and we return this to you to be destroyed. Please return the check to us properly signed, and also hand us the letter guaranteeing the final payment of the note, as you agreed. We hope to have your reply by the next mail, in order that we may get this straightened out.

"Yours truly,
"R. L. POLK PRINTING Co., Ltd."

"January 16, 1905.
"JOHN H. SMEDLEY, Esq.,
"Detroit, Mich.

"*Dear Sir:* Agreeable to our conversation with you on Saturday we enclose herewith a statement of your account showing balance due up to the amount of $3,313.87, for which you are to send us the enclosed note properly signed for $2,800 and a check for the balance of the account. It is understood that the Sail & Sweep Company may renew this note at the expiration of a ninety-day period, but that within one year the same shall be materially reduced if not entirely paid. It is also understood that from this date we are to receive check for our monthly bills within a period of ten days after statement of account is rendered, and there is to be no further requests for credit or extension of the ten-day limit for payment of the month's account. We agree to send letter to both you and Mr. Murray ten days before the three months' note is due in order that you may have sufficient time to take care of the renewal. Agreeable to your promise, please write us a letter guaranteeing the final payment of the $2,800 note. It is understood the note and check for the balance of account and the guarantee are to be sent us during the present week. Above is the understanding or agreement as we talked it over Saturday, which we trust you will find correct.

"Yours truly,
"The R. L. POLK PRINTING Co., Ltd."

Defendants gave evidence tending to prove that the actual agreement referred to in the letter of January 16, 1905, included a promise by Mr. Lloyd, as testified by Mr. Glidden:

"If it was necessary and we needed the amount to give

us credit to an equal amount that he had on his books, and we were to have credit for that amount if we needed it. What Mr. Lloyd said was this: That, if it was necessary to give us additional line of credit, he would do it up to $2,800 for the coming year, if it was necessary. I don't know whether it would be necessary or not, for he put us out of business before we could tell. * * * We were about going into our busiest season, and, having been through our slack season, was short of funds, and Mr. Lloyd at a conference at the Russell House agreed to accept $2,800 note, and we pay the difference in money or its equivalent, and he was to carry us for an additional $2,800 if we needed it.

"*Q.* He was to carry you for an additional $2,800?

"*A.* Yes, sir; for a year. It was in pursuance of the arrangement that the note of January 14th was given by the Sail & Sweep Company. It was in pursuance of that guaranty that the subsequent guaranty offered in evidence in this case was given by Mr. Smedley and Mr. Murray. * * * I saw the original of the letter of January 16th offered here in evidence, and marked 'Exhibit 9,' in the R. L. Polk Printing Company, in Mr. Lloyd's possession. It had not at that time been mailed. I called his attention to the fact that it was in direct violation of the understanding at that time the agreement was made. Mr. Lloyd upon my pointing out to him the part that was not in accordance to the agreement, he said he didn't think it would do any hurt to incorporate it, and I said I would not ask Mr. Smedley to sign such a thing as that and it was in direct violation of our agreement, and he took it back and wrote another letter which he sent over to our office. I supposed the letter, copy of which I hold in my hand, was destroyed. The substitute for it sent over to our office. It was sent back. That letter was sent back to Mr. Lloyd as soon as we read it. * * * It was practically the same as this except the clause with reference to the payment of the monthly bills after 10 days and no further requests for credit. That was stricken out, and otherwise the letter was practically as this was. That was the letter that was finally sent to Mr. Smedley. The consideration for Mr. Smedley and Mr. Murray sending of the letter of guaranty was this agreement of Lloyd to continue to give us credit, if we needed it, for one year up to the extent of $2,800. That is referred to in the letter of guaranty."

Mr. Van Fleet testified:

"I was not present in the Russell House at the conference described yesterday by Mr. Glidden in January, 1905, * * * but about that time I had a conversation with Mr. Lloyd concerning the matter. * * * Mr. Lloyd submitted the copy of a letter, Exhibit 9, which I believe was submitted yesterday. It was written January 16th. I would not be sure of the date. I remember discussing the copy of the letter, and we objected to the clause of the extension of credit, and Mr. Lloyd admitted that it was not in the agreement, but he thought it ought to be in, and he thought it was a good thing to put it in, and he was putting it in and would put it up to Mr. Smedley, and see if he would sign it, and Mr. Glidden and I objected, and later in the day he sent over a copy of another letter, and in that talk Mr. Lloyd went over what occurred at the meeting. He stated that day that the agreement was as set forth in the letter with the exception of the clause that we objected to, stipulating that there should be no further extension and credit and the bills should be paid.

"Q. What was the agreement about the extension to the Sail & Sweep Publishing Company of credit for the next year?

"A. The proposition was that we had been on the R. L. Polk Printing Company's books for $3,000 and over, which was practically cleared up by a note and subsequent paper transaction which appears on the books, and I remember that Mr. Lloyd made the remark at that particular discussion, that, having gotten that where he was sure of it he thought he could take some further chances on us, if it was necessary, and the understanding was—

"Q. He was stating to you what the understanding was?

"A. I can't state what he said exactly, but the substance of what he said was, if we needed it, but you will bear in mind we did not think we would need it at all. We thought we had our affairs straightened up, but the substance of his understanding was that, if we needed it, we were to have an extension of credit, and he thought he could go in as heavy as before. * * * The Polk Printing Company got $350 through Mr. Murray and credited it to us. They got the note of $2,800 and this $350, making $3,150 at that time. And Mr. Lloyd said, having gotten that out of the way, he would take his chances on our paper, if necessary. * * * I certainly

do adhere to the proposition that there was a proposition on the part of Mr. Lloyd if we gave him $2,800, the $2,800 note, guaranteed by Mr. Smedley and Murray, that he was to give us credit for $2,800. We were on the books at that time in the sum of $3,313.87. According to the agreement, the $2,800 note and the remainder was to be paid. The majority of it was paid in the paper deal and the little balance evidently not paid, but the balance of $160 I think was not paid, and consequently the amount which would be guaranteed by these men outside of their official capacity of the company was $2,800. I mean to say in addition to the $2,800 note, which had been guaranteed, that we were to have a further credit of $2,800 if it was necessary within a year."

Defendants further put in testimony tending to prove that on July 20, 1905, when the Sail & Sweep note fell due, plaintiff accepted in place of such note the individual note of Mr. Murray, as follows:

"$2,800.                    DETROIT, MICH., July 20, 1905.
"On demand after date I promise to pay to the Polk Printing Company or order $2,800 at the Old Detroit National Bank at six per cent. interest."

Also:

"He stopped the presses and the work on the magazine three or four times during the publication of that number, and my recollection is that the first form was on the press, being run, the first time he stopped the work. The first trouble come on when the magazine was in the press being printed and he objected to printing it. I don't remember the language he used, but he stated one or two little things. The general proposition was that Smedley was no good financially, and we had to show him something or some one should take Mr. Smedley's place or he would not go on. * * * He asked Mr. Glidden in my presence if Mr. Murray would shoulder that note himself, because he did not consider that Mr. Smedley was financially responsible. * * *

"*Q.* Did you have knowledge that Mr. Murray subsequently did go and clear the matter up personally by giving his own note?

"*A.* Yes, sir.

"*Q.* Did you discuss it afterwards?

"*A.* Mr. Lloyd told me that he had Mr. Murray's note.

"*Q.* Mr. Lloyd did tell you that he had Mr. Murray's personal note for the old paper of Smedley and Murray?

"*A.* Yes, sir. * * * I was present at the time when W. W. Murray gave the demand note. That was in the Polk Printing Company office. * * * It was given to replace the Sail & Sweep Publishing Company note, and Mr. Lloyd refused to accept the note that Mr. Smedley was on.

"*Q.* Mr. Lloyd refused to accept anything further from Mr. Smedley?

"*A.* Yes, sir.

"*Q.* What did he say?

"*A.* He said that Smedley was worthless, and his name was no good, and he should have nothing further to do with it."

At the close of the testimony, the court directed a verdict for plaintiff. Defendants bring the record to this court for review, assigning as errors:

(1) That the court erred in holding that evidence of the alleged oral contract to extend credit to defendants for $2,800 for another year, if needed, was incompetent, as tending to vary the terms of their written contract.

(2) That the court erred in not submitting to the jury as a question of fact whether plaintiff accepted the Murray note in place of the Sail & Sweep note, and thereby released the guarantors thereof.

1. We are of the opinion that the court did not err in refusing to consider the oral agreement as to an extension of credit. It appears from the undisputed evidence that plaintiff mailed, and the Sail & Sweep Company received, a letter on January 16th stating plaintiff's understanding of the oral agreement entered into by them. Plaintiff's bookkeeper testified that the letter was mailed as above printed. Defendants' witnesses testified that the letter mailed " was practically the same as this, except the clause with reference to the payment of the monthly bills after ten days and no further requests for credit. That was stricken out, and otherwise the letter was practically as this was." Plaintiff's letter, as amended, stating its understanding of the contract, and defendants' letter of

guaranty, construed together, expressly purport to contain all of the elements of the agreement theretofore made, and are not subject to change by parol testimony. *R. K. Carter Co.* v. *Weber*, 138 Mich. 576.

2. We are of the opinion that the court erred in refusing to submit to the jury the question of fact raised by the conflicting testimony as to the substitution of the Murray note for the Sail & Sweep note guaranteed by defendants.

The judgment is reversed, and a new trial granted.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.